Filed 10/11/24  P. v. Gomez CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B331711 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA005992) |
| v. | |
| FAUSTINO RAMIREZ GOMEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Affirmed in part and reversed in part.

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1991, a jury convicted Faustino Ramirez Gomez of, inter alia, first degree murder and attempted murder. We affirmed the judgment on direct appeal. (*People v. Cordero et al.* (Feb. 28, 1994, B061119) [nonpub. opn.] [*Gomez I*].) In 2019, Gomez petitioned for resentencing on his first degree murder and attempted murder convictions, and after an evidentiary hearing, the trial court denied his petition.

On appeal, Gomez argues no substantial evidence supports the trial court's finding beyond a reasonable doubt that he could still be convicted of murder and attempted murder. Gomez's principal argument is that trial court erred in finding Gomez's codefendant, who testified at the evidentiary hearing, not credible. This argument fails because of the well-established rule that appellate courts do not " 'reweigh evidence or reevaluate a witness's credibility.' [Citations.]" (*People v. Brown* (2014) 59 Cal.4th 86, 106; *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 627 [exclusive province of trial court or jury to determine the credibility of a witness].)

We conclude the record contains substantial evidence supporting the court's finding that Gomez aided and abetted the murder when he handed his fellow gang member, Rojelio Cordero, a gun so Cordero could avenge an earlier gang attack on his brother Jesus Cordero (Jesus). The record, however, contains no substantial evidence to support the inference that Gomez intended to kill the victim of the attempted murder. We therefore affirm the order insofar as it denies resentencing with respect to the murder and reverse the order insofar as it denies resentencing on the attempted murder.

# BACKGROUND

## 1. *Gomez's 1991 jury trial*

The evidence at Gomez's and Cordero's trial showed that Cordero and Gomez were members of the Happy Town gang. On October 17, 1990, Cordero's brother Jesus was assaulted by a person who claimed to be from "Cherryville," a rival gang to Happy Town.

A.D. observed the fight involving Jesus and heard the person fighting Jesus say "Cherryville."[1] Afterwards, A.D. told Cordero about the fight. Gomez was with Cordero at the time A.D. described the fight. A.D. testified that Cordero told Gomez to bring a gun and Cordero, Gomez, A.D. and three others drove back to Jesus's school. Gomez placed the gun under the car seat.

Cordero went inside the school and then the group, including Cordero, Gomez, and A.D., left the school in Cordero's car. A.D. testified that, as Cordero was driving, somebody in Cordero's car said, "There's the truck." Gomez handed Cordero the gun and Cordero fired four or five shots. A.D. further testified that she saw Gomez reach under the seat to retrieve the gun and saw him fire the gun.

Carlos Valdez and Carlos Segura were in the back of the pickup truck identified by someone in Cordero's car. Segura saw Gomez in the car with Cordero. Segura testified a bullet hit Valdez and he felt the bullets near him. Segura heard six shots. Valdez died of a gunshot wound to his head. Valdez and Segura were not gang members.

---

[1] A.D. testified under a grant of immunity.

At trial, A.D. admitted she had changed her story several times.  She had initially told an officer she was not in Cordero's car at the time of the shooting.  She also testified she had provided incorrect information during her initial interview because she was scared.  She testified, "[P]eople are threatening me."  A.D. also testified at the preliminary hearing that she was not sure whether Gomez handed over a gun and explained her preliminary hearing testimony was the product of fear.

The officer who interviewed A.D. testified A.D. initially told him she left Cordero's car before anything happened.  Later, A.D. told the officer Cordero asked Gomez for the gun and Gomez handed the gun to Cordero.  Another officer testified that it is not safe for a person to testify against a gang member in court.

Officer Dexter Cole testified he interviewed Jesus about the fight.  Jesus said as he was walking home from school, someone jumped him and said something like, "This is Cherryville." Officer Cole testified Cherryville and Happy Town are "bitter enemies."  Cole further testified that an "attack on the little brother of a gang member" would be "cause for payback." "Payback" means "retaliation."  Cole explained that the reputation of a hard core gang member who did not revenge an attack on his brother would suffer.  Officer Cole opined the crimes were committed for the benefit of, or in association with, the Happy Town gang.  He further explained that when a gang member kills someone, it benefits the gang because it intimidates others in the neighborhood.

Cordero and Gomez were jointly tried.  The jury convicted Gomez of first degree murder of Valdez, the willful deliberate and premeditated attempted murder of Segura, and  shooting at an occupied vehicle.  With respect to each crime, the jury found true

4

a gang enhancement and that Gomez had furnished a firearm "for the purpose of aiding, abetting or enabling that person to commit a felony. . . ."[2]

The court sentenced Gomez to 25 years to life for the murder and an additional two years for the firearm enhancement. The court sentenced him to life in prison with the possibility of parole for the attempted murder. Finally, the court sentenced Gomez to a consecutive five-year-determinate term on the conviction of shooting at an occupied vehicle.

## 2.     *Gomez's petition for resentencing*

In 2019, Gomez petitioned for resentencing pursuant to Penal Code[3] section 1170.95, now numbered section 1172.6. The trial court denied the petition at the prima facie stage and this court reversed that order. (*People v. Gomez* (Oct. 23, 2020, B303445) [nonpub. opn.] [*Gomez II*].) We reasoned the trial court had instructed the jury on the natural and probable consequences theory and the true finding on the firearm enhancement did not necessarily show Gomez acted with intent to kill.[4] (*Gomez II*, at pp. 4, 11–12.)

---

[2] The jury convicted Cordero of the same crimes and found he personally used a firearm in the commission of the offenses. The jury also found true the gang enhancement true.

[3] Unless designated otherwise, all statutory references are to the Penal Code.

[4] We also held that former section 1170.95 did not include attempted murder. (*Gomez II*, *supra*, B303445, at p. 13.) Subsequent to our opinion, the Legislature amended the statute to include attempted murder. (*People v. Montes* (2021) 71 Cal.App.5th 1001, 1006.)

5

Upon remand from *Gomez II,* the trial held an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3). The prosecution relied on the transcript from Gomez's jury trial. The prosecutor argued Gomez was an aider and abettor to the murder and attempted murder.

At the resentencing hearing, two witnesses testified for Gomez. Cordero testified that after he heard his brother Jesus had been assaulted, he wanted to check on his brother at school and asked Gomez to accompany him. When Cordero spoke to his brother, Jesus said "Cherryville" had attacked him. After they left the school, they observed a truck on the road and a girl in the car said, "That's them." Cordero asked Gomez for the gun and Gomez refused to give it to Cordero. Cordero "yanked" the gun from Gomez's hands and Cordero then shot the gun. Cordero also testified he "threatened" Gomez so that Gomez would give him the gun.[5] Cordero further testified he and Gomez were members of the Happy Town gang and Gomez accompanied him to "back [him] up."

Katy Gaines, a clinical neuropsychologist whose report was also admitted into evidence, concluded: "It is likely that, as a minor, Mr. Gomez suffered from behavioral and emotional deficits as a result of the cumulative impact of several and significant factors known to negatively impact development; alcoholic and violent father, family separation, financial hardship, lack of a positive male role model, academic difficulties, and growing up in gang-infested schools and neighborhoods. The above factors are known risk factors to drug use, gang

---

[5] Also admitted at the evidentiary hearing was Cordero's 2018 parole hearing transcript in which he reiterated that he forcibly took the gun from Gomez.

involvement, and crime.  Young males without the presence of a male role-model are often impressionable and susceptible to influence, seeking to belong and gain the approval or friendship or recognition of other males whom they perceive as confident and capable.  Extensive abuse of drugs such as PCP and inhalants often result[ ] in serious cognitive impairment.  These factors, along with the age-related underdevelopment of the executive functions associated with his age at the time of the offense, likely played a significant role in the commission of the charged offense[s]."

### 3.    *The trial court denies Gomez's resentencing petition*

At the conclusion of the evidentiary portion of the resentencing hearing, the trial court announced its findings.  The court acknowledged that the prosecution had the burden to prove beyond a reasonable doubt that Gomez was guilty of murder and attempted murder.  The court stated that had it accepted Cordero's testimony, Gomez would be entitled to resentencing.  The court, however, rejected Cordero's testimony finding that it was not credible.  The court stated, "I cannot place any weight into [*sic*] the testimony of Mr. Cordero."  Relying largely on A.D.'s trial testimony, the court found beyond a reasonable doubt that Gomez harbored the intent for murder and attempted murder and denied the petition.

## DISCUSSION

In Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015, § 2), the Legislature eliminated the natural and probable consequences theory as a basis for murder.  (*People v. Reyes* (2023) 14 Cal.5th 981, 984.)  Section 1172.6 provides a mechanism for a person previously convicted of inter alia murder

7

or attempted murder under the natural and probable consequences theory to petition for resentencing.[6] (§ 1172.6, subd. (a).) Under section 1172.6, a petitioner seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)–(c); *People v. Strong* (2022) 13 Cal.5th 698, 708.) If the trial court determines the petitioner has made such a showing, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and to resentence the petitioner on any remaining counts." (*People v. Gentile* (2020) 10 Cal.5th 830, 853; § 1172.6, subds. (c), (d)(1).)

When, as in this case, the trial court holds an evidentiary hearing to determine whether a petitioner is entitled to resentencing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

On appeal, Gomez argues that substantial evidence did not support the trial court's finding that he directly aided and abetted the first degree murder or attempted murder. Gomez asserts, "[T]his case came down to an issue of credibility between Cordero and" A.D., but that the trial court erred in crediting A.D.

---

[6] The statute also allows petitions for resentencing where the petitioner on a murder conviction was convicted under other theories of imputed malice. (§ 1172.6, subd. (a).) As previously noted in the text, the prosecution's theory was that Gomez aided and abetted first degree murder and attempted murder.

Gomez contends A.D.'s testimony was "unworthy of belief" because she "told so many stories of what occurred . . . ." (Italics omitted.) Respondent countered that substantial evidence supported denial of the petition as to both convictions.

We review for substantial evidence the trial court's finding that Gomez committed murder and attempted murder under a currently valid theory. (*People v. Reyes*, *supra*, 14 Cal.5th at p. 988.) Under this standard, we review the record " ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' [Citation.]" (*Ibid*.)

Preliminarily, Gomez ignores that in reviewing for substantial evidence, we do not reweigh evidence or assess the credibility of witnesses. (*People v. Brown*, *supra*, 59 Cal.4th at p. 106.) " '[C]onflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]' [Citation.] 'Testimony may be rejected only when it is inherently improbable or incredible, i.e., " 'unbelievable per se,' " physically impossible or " 'wholly unacceptable to reasonable minds.' " ' [Citation.]" (*People v. Ennis* (2010) 190 Cal.App.4th 721, 729; see also *People v. Dalton* (2019) 7 Cal.5th 166, 209.) A.D.'s testimony that she saw Gomez hand Cordero the gun just before the shooting is not inherently improbable even if she testified sometimes inconsistently about the events; she explained those inconsistencies as driven by her fear of testifying in a gang case.

9

We now consider whether substantial evidence supported the court's denial of Gomez's petition as to each conviction.

## A. Substantial Evidence Supports That Gomez Aided and Abetted the Murder of Valdez

"Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd.(a).)  To be convicted as an aider and abettor, a defendant must possess malice aforethought. (*People v. Gentile*, *supra*, 10 Cal.5th at p. 846.)  Intent to kill is malice aforethought.  (*Id.* at p. 844.)

Substantial evidence supported the trial court's finding that Gomez aided and abetted the unlawful killing of Valdez with intent to kill.  The evidence that Gomez accompanied Cordero to avenge the assault on Cordero's brother by a rival gang and carried a loaded firearm he later gave to Cordera supports the inference that Gomez harbored intent to kill.  (See *People v. Canizales* (2019) 7 Cal.5th 591, 602 ["Direct evidence of intent to kill is rare, and ordinarily the intent to kill must be inferred from the statements and actions of the defendant and the circumstances surrounding the crime."].)  Gomez's intent to kill a Cherryville gang member transfers to the killing of Valdez even though Valdez was not a gang member.  (*People v. Nguyen* (2024) 103 Cal.App.5th 668, 680, 685 [doctrine of transferred intent applies to aider and abettor to murder].)  " 'When one attempts to kill a certain person but by mistake or inadvertence kills a different person, the crime, if any so committed, is the same as though the person originally intended to be killed, had been killed.' "  (*Id.* at p. 680.)

Gomez's contrary argument does not view the facts in the light most favorable to the trial court's order.  Instead, Gomez relies on facts most favorable to him.  For example, Gomez argues

10

Cordero was on a "personal" mission.  Gomez also contends he "merely sat in the vehicle while Cordera engaged in the shooting."  When viewed in the light most favorable to the trial court's order, the evidence supports the inference that Cordero and Gomez were acting together in support of their Happy Town gang to retaliate against the Cherryville gang because a member of Cherryville assaulted Cordero's brother.  Gomez did not merely sit with Cordero.  He brought a loaded firearm and handed the firearm to Cordera to enable Cordero's shooting of Valdez.

Finally, Gomez argues there was insufficient evidence of premeditation and deliberation.  "[U]nder section 1172.6, a trial court has two options in adjudicating a resentencing petition: Deny the petition and leave in place the murder conviction or grant the petition and vacate the murder conviction and resentence the defendant on the remaining charges or target offense or underlying felony.  Reducing a first degree murder conviction to second degree murder is not an option under section 1172.6." (*People v. Gonzalez* (2023) 87 Cal.App.5th 869, 881.)  Because substantial evidence supports the trial court's finding that Gomez committed murder as murder is currently defined, to wit, as an aider and abetter with intent to kill, we do not address Gomez's argument further.

**B.	Gomez Is Entitled to Resentencing on the Attempted Murder Conviction Because There was No Substantial Evidence of Gomez's Intent To Kill Segura**

As to the attempted murder conviction, "the prosecution must establish 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' [Citation.]" (*People v. Canizales*, *supra*, 7 Cal.5th at

11

p. 602.)  "To be guilty of attempted murder, the defendant must intend to kill the alleged victim, not someone else." (*People v. Bland* (2002) 28 Cal.4th 313, 328.)  The transferred intent doctrine does not apply to attempted murder.  (*People v. Smith* (2005) 37 Cal.4th 733, 739–740.)

There was no evidence supporting the inference that Gomez intended to kill Segura, who was not a Cherryville gang member.  Assuming arguendo that Cordero intended to kill all of the passengers in the truck when he shot multiple bullets into the truck bed, there was no evidence that Gomez shared that intent.  Evidence supporting the inference that Gomez intended to kill the person who assaulted Jesus does not also demonstrate that Gomez also intended to kill Segura.[7]

---

[7] We do not rely on Cordero's testimony at the evidentiary hearing because the trial court found it not credible.  In contrast, respondent relies on portions of Cordero's testimony from the evidentiary hearing in arguing substantial evidence supported the murder and attempted murder convictions.  Specifically, respondent relies on Cordero's testimony that Gomez intended to act as "back up" for Cordero and that they went to look for Cherryville gang members who attacked Jesus because their gang code required Cordero to avenge the attack.  Even if the trial court had credited that testimony, it does not support the inference that Gomez intended to kill Segura.

## DISPOSITION

The order denying Faustino Ramirez Gomez's resentencing petition on the murder conviction is affirmed.  The order denying Gomez's resentencing petition with respect to attempted murder is reversed.  The case is remanded for resentencing consistent with this opinion.  Upon resentencing, the trial court shall forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.

13